**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Milton S.,

Petitioner,

v.

Ryan Shea, *Sheriff, Freeborn County Sheriff's Office*; Todd Blanche, *Acting Attorney General of the United States*; Markwayne Mullin, *Secretary, U.S. Department of Homeland Security*; David Venturella, *Acting Director of U.S. Immigration and Customs Enforcement*; Sam Olson, *Field Office Director the St. Paul Field Office for ICE within DHS*,

Respondents.

File No. 26-CV-4342 (JMB/LIB)

**ORDER**

---

Sherene Mostaghimi, Gam Law, St. Paul, MN, for Petitioner Milton S.

David W. Fuller and Carl Berry, United States Attorney's Office, Minneapolis, MN, for Respondents Todd Blanche, Markwayne Mullin, David Venturella, and Sam Olson.

David John Walker, Freeborn County Attorney's Office, Albert Lea, MN, for Respondent Ryan Shea.

---

This matter is before the Court on Petitioner Milton S.'s[1] Petition for Writ of Habeas Corpus (Petition) under 28 U.S.C. § 2241 (Doc. No. 1 [hereinafter, "Pet."]), which names

[1] This District has adopted a policy of using only the first name and last initial of any nongovernmental parties in immigration cases.

Ryan Shea, Todd Blanche, Markwayne Mullin, David Venturella, and Sam Olson as Respondents. (*Id.*) For the reasons explained below, the Court grants the Petition.

**FINDINGS OF FACT**

1. Milton S. is a 44-year old native and citizen of Ecuador. (Doc. No. 7-1 at 1; Pet. ¶ 7.) On or around September 12, 2023, Milton S. entered the United States at the U.S.-Mexico border near El Centro, California. (Doc. No. 7-1 at 3.)

2. On September 12, 2023, after crossing the border, Milton S. was detained by Customs and Border Patrol officers, at which time Milton S. claimed fear of return to Ecuador. (*Id.*; Doc. No. 10-1.) According to DHS records, Milton S. was thereafter "processed as Expedited Removal with Credible Fear" pursuant to 8 C.F.R. § 212.5. (Doc. No. 7-1 at 3.)

3. On November 11, 2023, a Supervisory Asylum Officer in Houston, Texas, issued a Form I-862 Notice to Appear (NTA), which ordered Milton S. to appear before an immigration judge in Minnesota in August 2024. (*Id.*; Doc. No. 7-2.) The NTA was addressed to Milton S. at a home address in Minneapolis. (Doc. No. 7-2 at 1.) The NTA notes that it was "issued after an asylum officer has found that [Milton S.] has demonstrated credible fear of persecution or torture." (*Id.*)

4. On December 6, 2023, Immigration and Customs Enforcement (ICE) officers served Milton S. with an "Interim Notice Authorizing Parole," which was meant to "inform [him] that [ICE] has decided to parole you from its custody pursuant to its authority under [8 U.S.C. § 1182(d)(5)(A)]." (Doc. No. 10-1.) The Notice stated that Milton S. was subject to certain conditions of release while on parole and that parole expired after one year. (*Id.*)

At some point between September 12 and December 6, 2023, Milton S. was released from detention pursuant to conditions of release.

5. There is no evidence presented to suggest that Milton S. ever violated any conditions of release.

6. Since some time after December 6, 2023, Milton S. has been residing in Minneapolis, where he works as a dishwasher. (Doc. No. 7-1 at 1; Doc. No. 7-2.)

7. Milton S. has pending asylum proceedings.[2] (Doc. No. 7-1 at 3.)

8. There is no record evidence of whether or what occurred at the August 2024 hearing noticed in the November 2023 NTA.[3]

9. Milton S. has no known criminal history. (*See id.* at 2.)

10. Some time on or before August 27, 2026, Milton S.'s auto mechanic provided him a loaner vehicle—which Milton S. did not know had been reported stolen—while Milton S.'s car was in the shop. (Pet. ¶ 19.) On August 27, 2026, police officers in Brooklyn Center, Minnesota, arrested Milton S. for allegedly receiving stolen property—specifically, for driving the loaner that had been reported stolen. (Doc. No. 7-1 at 3.)

---

[2] In their response to the Petition, Respondents' counsel states that "[d]espite claiming fear [upon arrival in the United States], the Petitioner did not file any applications for relief," even though the supporting document to which counsel cites expressly provides that Milton S. "currently has [a] pending asylum case." (Doc. No. 6 at 1; Doc. No. 7-1 at 3.)

[3] Presumably, the proceeding that occurred included a discussion regarding potential detention or continued release. Respondents, however, provided no information concerning this hearing. The Court is concerned that Respondents have deliberately chosen not to provide information ordered by the Court concerning release and conditions of release, but in light of the decision to grant the Petition on other grounds, the Court need not address this issue.

Milton S. informed police that he had no knowledge that the vehicle had been reported stolen, and he was not investigated for or charged with any crime. (Pet. ¶ 19.)

11. On October 6, 2026, Milton S. drove his own vehicle to work in northeast Minneapolis. (*Id.* ¶ 13.)

12. Meanwhile, two ICE officers, Supervisory Detention and Deportation Officer (SDDO) Randy Langworthy and Deportation Officer William Witt, along with several other vehicles operated by DHS officials (Pet. ¶ 14) were working "fugitive operations"[4] in northeast Minneapolis. (Doc. No. 7-1 at 2.) At 6:45 a.m., Langworthy and Witt observed a vehicle driven by Milton S. pass them. (*Id.*)

13. Langworthy and Witt "followed the vehicle for a short while before initiating their vehicle's emergency lights to perform a vehicle stop."[5] (*Id.*; Pet. ¶ 14.)

---

[4] This term is not defined or explained. The Court is concerned that this term and others like it, such as "targeted enforcement operation," are not, in fact, accurate descriptions of the activities of the federal officers involved. In most immigration habeas cases that the Court has reviewed (and as it appears was the case here), federal officers taking a petitioner into custody have no knowledge of the petitioner's identity prior to initiating contact with the petitioner. Thus, despite the term used, the petitioner is not a fugitive, and the operation is not targeted to that specific person. Not only are such terms disingenuous—or even fraudulent—representations when used to describe conduct such as checkpoints or license plate checks, but they also potentially violate the Fourteenth Amendment if officers are only checking license plates of vehicles driven by people who present as Black, Latino, or members of another ethnic or racial group: it is well-established that the Equal Protection Clause of the Fourteenth Amendment prohibits selective enforcement of the law based on considerations such as race, ethnicity, or religion. *E.g.*, *Whren v. United States*, 517 U.S. 806, 813 (1996); *Wayte v. United States*, 470 U.S. 598, 608 (1985); *Gilani v. Matthews*, 843 F.3d 342, 347 (8th Cir. 2016).

[5] There is no statement of any kind establishing the time of arrest or the duration of the "short while" during which time ICE officers followed the vehicle. Nor is there any sworn statement in the record that establishes the time when ICE officers first observed Milton S., or the time when ICE officers first detained Milton S.

14. At some unknown time, several unmarked ICE vehicles surrounded Milton S. (Pet. ¶ 14.)

15. During the encounter, Langworthy "approached the driver's side door, identified himself, and visually noticed the driver was the owner of the vehicle," at which point Witt "escorted [Milton S.] out of the vehicle and placed him under arrest by handcuffing him behind his back, checking for tightness and double locked." (Doc. No. 7-1 at 2; Doc. No. 7-3.) After Milton S. was cuffed, officers "searched incident to arrest with negative results," and Milton S. "requested that [officers] park his vehicle in his work parking lot across the street." (Doc. No. 7-1 at 2.)

16. Milton S. was not given or shown a warrant when taken into custody, and ICE officers told him that they detained him because he was "criminally charged."[6] (Pet. ¶¶ 15, 18.)

17. The Form I-200 administrative warrant was directed to "[a]ny immigration officer authorized pursuant to sections 236 and 287 of the [Immigration and Nationality Act (INA)] [i.e., 8 U.S.C. §§ 1226, 1357] and part 287 of title 8, Code of Federal Regulations, to serve warrants of arrest for immigration violations." (Doc. No. 7-2.) Thus, Respondents detained Milton S. pursuant to their authority under 8 U.S.C. § 1226.

18. The Form I-200 administrative warrant shows that it was drawn up and

---

[6] When booking Milton S., Witt filled out the portion of the booking form for "Criminal History" as follows: "On August 27, 2026, [Milton S.] was arrested by Brooklyn Center Police Dept. for receiving stolen property. Charges currently have not been charged [sic]." (Doc. No. 7-1 at 3.) Thus, the statement that Milton S. was "criminally charged" was a false statement made by ICE officers at the time they took Milton S. into custody.

issued at an unknown time on October 6, 2026, by Langworthy, as follows:

> **YOU ARE COMMANDED** to arrest and take into custody for removal proceedings under the Immigration and Nationality Act, the above-named alien.
>
> (Signature of Authorized Immigration Officer)
>
> Randy Langworthy SDDO
> (Printed Name and Title of Authorized Immigration Officer)

(Doc. No. 7-3.)

19. The Form I-200 administrative warrant shows that it was served on Milton S. by an unknown official at 7:04 a.m. on October 6, 2026.

> **Certificate of Service**
>
> I hereby certify that the Warrant for Arrest of Alien was served by me at New Hope, MN (Location) on Saltos-Velasquez, Milton (Name of Alien) on 10/6/2026@0704 (Date of Service), and the contents of this notice were read to him or her in the Spanish (Language) language.
>
> 8492
> Name and Signature of Officer
>
> Name or Number of Interpreter (if applicable)

(*Id.*)

20. Witt transported Milton S. to the Bishop Henry Whipple building for processing. (Doc. No. 7-1 at 2.)

21. During processing, Milton S. made a claim of fear of return to Ecuador. (Doc. No. 7-1 at 3.)

22. Since being taken into custody on October 6, Milton S. has remained in DHS custody at the Freeborn County Jail in Albert Lea, Minnesota. (Pet. ¶ 20.)

23. On October 9, 2026, Milton S. filed his Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Doc. No. 1.)

24. On October 9, 2026, the Court ordered Respondents to file a response to the Petition on or before 11:00 a.m. on October 14, 2026 and to provide "any and all prior orders of release or supervision that have ever been issued to Petitioner." (Doc. No. 3.)

25. On October 14, 2026, Respondents timely filed a response to the Petition. (Doc. Nos. 6, 7.)

26. On October 15, 2026, the Court ordered Respondents to file a declaration by someone with relevant knowledge providing the Court with "any and all prior orders of release or supervision that have ever been issued to Petitioner," or, if none exist, to provide the Court with an explanation for DHS's decision to release Milton S. from detention after he entered the United States in September 2023. (Doc. No. 8.)

27. On October 15, 2026, Respondents produced a document entitled, "Interim Notice Authorizing Parole," which ICE issued to Milton S. on December 6, 2023. (Doc. No. 9.)

## DISCUSSION

In his Petition, Milton S. seeks immediate release, arguing that his detention violates the requirements of the INA and accompanying regulations (namely, 8 C.F.R. § 287.8(c) and 8 U.S.C. § 1357(a)(2)), as well as the Fourth Amendment of the Constitution. (Pet. at 7–8.) For their part, the Respondents argue that Milton S. was detained pursuant to a valid Form I-200 administrative warrant, that his detention is mandatory pursuant to 8 U.S.C. § 1225(b)(2), and that Milton S.'s detention satisfies the constitutional requirements of due process (grounds for relief never raised by Milton S.). For the reasons set forth below, the Court grants the Petition.

**A. Right to Habeas Relief**

A writ of habeas corpus may be granted to any person who demonstrates he is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3); *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (concluding that the Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States" (citing U.S. Const., Art. I, § 9, cl. 2)). For most of the nation's history, habeas review "has remained a critical check on the Executive, ensuring that it does not detain individuals except in accordance with law." *Hamdi*, 542 U.S. at 525 (quotation omitted). The right to challenge the legality of a person's confinement through a petition for a writ of habeas corpus "extends to . . . immigration-related detention." *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2020) (citation omitted). The petitioner bears the burden of proving that his detention is illegal by a preponderance of evidence. *Mohammed H. v. Trump*, 786 F. Supp. 3d 1149, 1154 (D. Minn. 2025).

**B. Inapplicability of 8 U.S.C. § 1225**

It is an undisputed matter of fact that Respondents detained Milton S. pursuant to their discretionary authority under 8 U.S.C. § 1226. The Form I-200 administrative warrant was directed to "[a]ny immigration officer authorized pursuant to sections 236 and 287 of the [INA] [i.e., 8 U.S.C. §§ 1226, 1357] and part 287 of title 8, Code of Federal Regulations, to serve warrants of arrest for immigration violations." (Doc. No. 7-2.) In response to the Petition, however, Respondents advance a different basis for the detention of Milton S.: 8 U.S.C. § 1225(b)(2)(A), as interpreted by *Avila v. Bondi*, 170 F.4th 1128, 1133–35 (8th Cir. 2026) (concluding that section 1225(b)(2) requires the mandatory

detention noncitizens, without any individualized determination and regardless of whether the noncitizen is encountered at the border at the time of entry or in the interior of the United States months, years, or decades after entry). *But see Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1180 (9th Cir. July 30, 2026) (rejecting Respondents' "new interpretation" as inconsistent with "the assertedly unambiguous language of the statute" and because "it raises various textual and interpretive problems," citing similar holdings from the Second, Sixth, Tenth, and Eleventh Circuits).

The Court concludes that Respondents cannot now change the basis for the detention of Milton S. He was detained under section 1226 alone, and Respondents advance no legal argument to support the proposition that they can alter this fact through filing of their written responsive submissions. Thus, just as it is stated in the Form I-200 on which ICE based Milton S.'s detention, the Court concludes that the Respondents detained Milton S. pursuant to the framework of 8 U.S.C. § 1226. *See, e.g.*, *Martha C.G.P. v. Blanche*, No. 26-CV-2308 (DWF/JFD), 2026 WL 1329577, at *2 (D. Minn. May 13, 2026) (rejecting respondents' contention that petitioner was subject to mandatory detention under section 1225(b) where Form I-200 warrant represented that detention was pursuant to section 1226); *Hector J.A.S. v. Shea*, No. 26-CV-2242 (JRT/DLM), 2026 WL 1243500, at *2 (D. Minn. May 6, 2026) (same); *see also Espinoza-Avalos*, No. 8:26-CV-0191, 2026 WL 1396593, at *1–3 (D. Neb. May 19, 2026).

**B. Violations of Applicable Regulatory and Statutory Requirements**

Agents may detain a non-citizen either on a valid warrant or in accordance with applicable warrantless arrest procedures. 8 U.S.C. § 1357; 8 C.F.R. § 287.8(c)(2)(ii); *see*

*also Venancio P.J. v. Blanche*, No. 26-CV-2740 (ECT/JFD), 2026 WL 1862252, at *2 (D. Minn. June 29, 2026). DHS's "general procedures" for all "enforcement activities," including for the "conduct of arrests," requires that "[a] warrant of arrest shall be obtained except when the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained." 8 C.F.R. § 287.8(c)(2)(ii). Here, Respondents violated applicable regulatory and statutory requirements in three respects.

First, Respondents did not comply with the requirements of section 287.8(c)(2)(iii). That regulation provides that, "[a]t the time of the arrest," the detaining officers must do the following two things: "(A) [i]dentify himself or herself as an immigration officer who is authorized to execute an arrest; and (B) [s]tate that the person is under arrest and the reason for the arrest." *Id.* § 287.8(c)(2)(iii). According to the Form I-213 document created at the time of Milton S.'s booking, after stopping Milton S.'s vehicle, Langworthy identified himself to Milton S. (Doc. No. 7-1 at 2.) However, there is no evidence that either Langworthy, Witt, or any other officer present at the time of detention[7] informed Milton S. that he "[wa]s under arrest and the reason for the arrest," as required by regulation. *See id.* § (c)(2)(iii). Instead, according to Milton S., an officer claimed that the detention was because "Petitioner was 'criminally charged'" (Pet. ¶ 19), which, according to Respondents' own documentation, was untrue. (Doc. No. 7-1 at 3 ("On August 27, 2026, [Milton S.] was arrested by Brooklyn Center Police Dept. for receiving stolen

[7] Milton S. recalls that multiple "unmarked ICE vehicles" surrounded him at the time of his arrest. Nothing in the record suggests that the only officers present were just Langworthy and Witt.

property. Charges currently have not been charged [sic]."); Doc. No. 7-3 (reflecting that the actual purported basis for the detention is the pendency of removal proceedings, not criminal charges).) Langworthy is Respondents' declarant in support of their opposition to Milton S.'s petition, and he was one of the officers present when Milton S. was taken into custody; if he believed that Milton S.'s recollection was not true, he could have—but did not—rebut it. (*See* Doc. No. 7.) Thus, the record shows that neither Witt nor Langworthy (nor any other officer) informed Milton S. of the actual reason he was being detained. Respondents violated the plain requirements of 8 C.F.R. § 287.8(c)(2)(iii).

Second, the warrant is invalid because the serving officer cannot be identified. Pursuant to 8 U.S.C. § 1226(a)—under which authority Respondents purportedly took Milton S. into custody (Doc. No. 7-3)—"[o]n a warrant issued by the Attorney General, a [non-citizen] may be arrested and detained pending a decision on whether the [non-citizen] is to be removed from the United States." 8 U.S.C. § 1226(a); *see also Ahmed M. v. Bondi*, No. 25-CV-4711 (ECT/SGE), 2026 WL 25627, at *3 (D. Minn. Jan. 5, 2026). A Form I-200 is an administrative warrant which authorizes detention of a non-citizens if it is "issued only by those immigration officers listed in [section] 287.5(e)(2) . . . and may be served only by those immigration officers listed in [section] 287.5(e)(3)." 8 C.F.R. § 236.1(b)(1). Putting both requirements together, DHS may detain a non-citizen using Form I-200 only if the Form I-200 indicates who the issuing and the serving immigration officers are. *See* 8 U.S.C. § 1226(a); 8 C.F.R. § 236.1(b)(1). This is because only immigration officers are "authorized to issue warrants of arrest under the relevant regulation." *Fernando C.C. v. Bondi*, No. 26-CV-1235 (LMP/JFD), 2026 WL 446408, at

*5 (D. Minn. Feb. 17, 2026). Therefore, a warrant is invalid when it does not indicate who the issuing immigration officer is *and* who the serving immigration officer is. *Cf. Tanneh W.S. v. Blanche*, No. 26-CV-2775 (LMP/EMB), 2026 WL 1801140, at *3 (D. Minn. June 23, 2026) (holding that a Form I-200 warrant was valid when both the issuing and serving officers' information verified them as deportation officers).

Here, Respondents did not establish that they satisfied the second requirement of 8 C.F.R. § 236.1(b)(1). The record presented establishes that, while the Form I-200 warrant was issued by SDDO Langworthy, it was served by an individual identified only by an illegible scribble, a number that appears nowhere else in the record, and no indication of the their rank or title. (*See* Doc. No. 7-3.) *Cf. Fernando C.C.*, 2026 WL 446408, at *5. Thus, Respondents violated 8 C.F.R. § 236.1(b)(1), and the warrant is invalid.

Third, the detention preceded the issuance of a warrant, and Respondents did not comply with the requirements of a warrantless arrest. Respondents do not provide a sworn statement regarding when the Form I-200 was issued or stating that the warrant was issued before taking Milton S. into custody. Respondents did provide an unsworn report of the events of October 6, 2026, in which Witt, the author, states that Langworthy and Witt observed Milton S.'s vehicle at 6:45 a.m., followed him "for a short while," and then stopped it. (Doc. No. 7-3 at 2.) Absent any evidence to the contrary, in the context of a traffic stop, the Court understands "a short while" to mean a matter of a few minutes, at most. This corroborates Milton's recollection that officers did not serve or show him a warrant at the time he was taken into custody (Pet. ¶ 15) and is consistent with the Form I-200 itself, which shows that it was served nearly twenty minutes after officers initiated

the traffic stop of Milton S.'s vehicle (Doc. No. 7-3). Based on this limited record, the Court is compelled to conclude that officers took Milton S. into custody without first obtaining a warrant, and therefore, Respondents must establish that both requirements of 8 U.S.C. § 1357(a)(2) were satisfied. Respondents have not done so.

Absent a valid warrant, Respondents may take a person into custody if there is probable cause "to believe that the [noncitizen] so arrested is [1] in violation of any[] law or regulation [made in pursuance of law regulating the admission, exclusion, expulsion, or removal of noncitizens] and [2] is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2); *see also* 8 C.F.R. § 287.8 (c)(2)(ii) (stating that a warrant of arrest "shall be obtained except when the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained"); *U.S. v. Diaz-Quintana,* 623 F.3d 1237, 1239 (8th Cir. 2010) (concluding that the phrase "reason to believe" in section 1357(a)(2) means "constitutionally required probable cause"). Respondents make no argument whatsoever concerning the claim in the Petition that "[n]either statutory exception under § 1357(a)(2) was present." (Pet. ¶ 22; *see also id.* ¶¶ 16, 21–25.) Absent any argument, the Court necessarily agrees with Milton S. that Respondents have not established that at the time they initiated the detention, officers had probable cause to believe Milton S. was likely to escape.[8] Thus, Respondents violated

[8] Generally, respondents waive arguments that they elect not to make. *See Rodriguez-Quiroz v. Lynch*, 835 F.3d 809, 822 n.6 (8th Cir. 2016) (noting that the government waived an argument by failing to raise it in an immigration appeal); *see also Estephanny P. v. Bondi*, No. 26-CV-198 (ECT/JFD), Doc. No. 10, at *3 (D. Minn. Jan. 15, 2026) (citing *Doe v. Mayorkas*, No. 22-cv-752 (ECT/DTS), 2022 WL 4450272, at *2 (D. Minn. Sep. 23, 2022) (concluding that failure to respond is an express waiver of those arguments or

section 1357(a)(2).

For each of these reasons, the detention of Milton S. is unlawful and immediate release is the appropriate remedy. *Munaf v. Geren*, 553 U.S. 674, 693 (2008) ("Habeas is at its core a remedy for unlawful executive detention. The typical remedy for such detention is, of course, release."); *see also Gonzalez Ochoa v. McCleary*, 816 F. Supp. 3d 921, 927–28 (S.D. Iowa 2026) (concluding ICE had no authority to arrest petitioner relying on Form I-200 that issued before the NTA); *Alberto C.M. v. Noem*, 817 F. Supp. 3d 735, 739 (D. Minn. 2026) (granting petition on grounds that detention under section 1226(a) was unlawful where Form I-200 "was not issued until after [petitioner's] arrest and initial detention"); *see also, e.g.*, *Felix Alberto J.M. v. Blanche*, No. 26-CV-2944 (LMP/DLM), 2026 WL 1906596, at *5 (D. Minn. July 2, 2026) (concluding Respondents' detention of petitioner was invalid warrantless arrest and petitioner was entitled to remedy of release); *Venancio P.J.*, 2026 WL 1862252, at *3 (same); *Hector J.A.S.*, 2026 WL 1243500, at *2 (ordering release of petitioner where respondents did not issue NTA until booking, well after taking the petitioner into custody); *Pina C.D.B. v. Bondi*, No. 26-CV-1929 (KMM/DJF), 2026 WL 810676, at *3 (D. Minn. Mar. 24, 2026) (concluding "immediate release is the proper remedy" when a person is taken into custody without a valid administrative warrant); *Jouquin C.S. v. Bondi*, No. 26-CV-1438 (DWF/DJF), 2026 WL

---

claims)); *Bland v. California Dep't of Corr.*, 20 F.3d 1469, 1474 (9th Cir. 1994) ("When the State's return fails to dispute the factual allegations contained in the petition and traverse, it essentially admits those allegations."), *overruled on other grounds by Schell v. Witek*, 218 F.3d 1017 (9th Cir. 2000). Given the conclusion that Respondents have not established the second prong of section 1357(a)(2), the Court need not determine whether Respondents have also waived arguments regarding the first prong of this section.

483256, at *2–3 (D. Minn. Feb. 20, 2026) (concluding DHS's detention of petitioner under section 1226(a) was unlawful because DHS arrested petitioner pursuant to Form I-200 that was invalid by virtue of being issued prior to issuance of NTA); *Marinero v. Bondi*, No. 26-CV-1007 (JMG), 2026 WL 357653, at *1 (D. Minn. Feb. 9, 2026) ("[I]ssuing an administrative warrant after an arrest . . . isn't good enough to trigger § 1226(a).").

**ORDER**

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT the Petition (Doc. No. 1) is GRANTED as follows:

1. Respondents are ORDERED to release Petitioner Milton S. immediately and in any event no later than 4:00 p.m. CT on October 19, 2026.

2. On or before 11:00 a.m. CT on October 20, 2026, counsel for Respondents shall file a letter affirming that they have released Petitioner Milton S.

3. On or before 11:00 a.m. CT on October 20, 2026, counsel for Respondents shall also file a declaration pursuant to 28 U.S.C. § 1746 by an individual with personal knowledge that states when and where the Petitioner was released, attaches any and all documentation concerning the Petitioner's release, and affirms with supporting documentation that all property of Petitioner was returned to Petitioner upon release (or, if property is retained, state which property is retained, the legal basis for its retention, and affirm that Respondents duly provided Petitioner with certified copies of any and all immigration-related documentation). Respondents must submit each of the following three forms to affirm return of Petitioner's property: I-77, I-216, and G-589. If Petitioner's property is lost, Respondents must also submit form I-387, "Report of Detainee's Missing Property." If Respondents cannot provide one or more of these forms, Respondents must address why they are unable to do so.

4. Petitioner Milton S. may move separately within 30 days of final judgment in this action to recover attorney's fees and costs under the Equal Access to Justice Act, 20 U.S.C. § 2412(d).

5. To the extent Petitioner Milton S. seeks additional relief, the Petition is DENIED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: October 17, 2026

/s/ *Jefrey M. Bryan*
Judge Jeffrey M. Bryan
United States District Court